THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

THE BARTRAM, LLC,
a Delaware limited liability
company,

    Plaintiff,

v.                                          CASE NO. 1:10-cv-00028-SPM-GRJ

LANDMARK AMERICAN INSURANCE
COMPANY, an Oklahoma corporation,
ROCKHILL INSURANCE COMPANY,
an Arizona corporation, and
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, a Georgia
corporation,

    Defendants.
_____/

## **O R D E R**

Pending before the Court are: (1) Amended Plaintiff's Motion To Compel Discovery From Landmark American Insurance Company (Doc. 63), (2) Plaintiff's Motion To Compel Discovery From Westchester Surplus Lines Insurance Company (Doc. 65), and (3) Plaintiff's Amended Motion To Compel Discovery From Rockhill Insurance Company. (Doc. 66.) Defendants have filed a single response[1] addressing all three motions. (Doc. 73.) For the reasons discussed below, Plaintiff's motions are all due to be **GRANTED** to the extent of this Order.

## **I. INTRODUCTION**

This action involves claims for damages that occurred to an apartment project

---

[1] The Court authorized Defendants to file a single response addressing all three motions during a December 15, 2010 telephonic hearing on an unrelated motion in this case.

owned by Plaintiff in Gainesville, Florida as a result of alleged construction defects. Prior to construction of the apartment project, Plaintiff purchased four layers of builder's risk insurance from the Defendants, which collectively provided coverage in excess of $25,000,000. Defendant Landmark American Insurance Company ("Landmark") issued policies that provided levels 1 and 4 of the coverage, while Defendant Rockhill Insurance Company ("Rockhill") issued the policies that comprised level 2 of the coverage. Defendant Westchester Surplus Lines Insurance Company ("Westchester") issued the policies that provided level 3 of the coverage.

Plaintiff contends it first became aware of the construction defects that led to the damage to its apartment project in July 2008. Plaintiff submitted claims to each Defendant for payment under the respective policies issued by each Defendant. Even though none of the three Defendants had formally denied Plaintiff's claims, Plaintiff, nevertheless, filed suit on February 17, 2010 seeking a declaratory judgment that its losses are covered under the policies issued by Defendants and alleging breach of contract by each Defendant in failing to provide payment under those policies.

The discovery dispute raised in Plaintiffs' current motions concern a set of virtually identical interrogatories and requests for production that were sent to each Defendant. On June 14, 2010, Plaintiff served its First Request for Production of Documents upon each Defendant, which requested, among other documents, production of all documents in Defendant's possession regarding claims submitted by Plaintiff related to the apartment project and all documentation relating to any investigation performed by each Defendant concerning any losses or damages that Plaintiff had reported in connection with the apartment project. On July 28, 2010, each

Defendant served its responses to the requests for production, in which Defendants objected on the grounds that each request for production was overbroad, vague, and ambiguous and that the requested documents were protected under state law by the work product doctrine and attorney-client privilege.

On June 14, 2010, Plaintiff also served its First Set of Interrogatories upon each Defendant, requesting, among other things, that each Defendant identify everything that it had done to investigate the claims submitted by Plaintiff and to identify whether each Defendant had a standard protocol in notifying a builder's risk insurance policyholder whether a particular claim was covered by the policy or not. On July 22, 2010, each Defendant served its responses to the interrogatories, objecting to the requested information on the grounds that the requests were irrelevant and privileged under state law based on both attorney-client privilege and the work product doctrine.

In the current motion, Plaintiff seeks an order of this Court compelling each Defendant to fully respond to the interrogatories and compelling each Defendant to produce responsive documents, including each Defendant's claims files. Further, Plaintiff requests the Court to issue an order compelling Defendants Landmark and Rockhill to produce all documents listed on their respective privilege logs.

In their response to Plaintiffs' motion Defendants advise that in the interest of resolving the issues raised by Plaintiff's motions, the Defendants agree to provide amended responses, produce additional documents, and provide amended privileged logs. There is, however, still a single request for production to which Defendants continue to object on relevancy grounds.

## II. DISCUSSION

### A. Requests for Production

#### 1. Plaintiff's Requests for Production Nos. 1-6 and 8-14

Plaintiff seeks an order from this Court compelling Defendants to fully respond to and produce more documents in response to requests nos. 1-14 of Plaintiff's First Request for Production of Documents, including all the documents listed on the privilege logs of Defendants Landmark and Rockhill and all of the documents in the claims file of each Defendant.

Initially, relying upon Florida state law, Defendants took the position that all of the documents in their respective claims files were privileged from disclosure as work product. The work product doctrine in federal court, however, is governed by federal law, not state law. Under federal law an insurer's claims files are not automatically entitled to protection under the work product doctrine in a first party insurance dispute. The Atrium On The Ocean II Condominium Association, Inc. v. QBE Insurance Corp., No. 06-14326-CV, 2007 WL 2972937, at *1 (S.D. Fla. Oct. 9, 2007)("Indeed, case law strongly supports the Magistrate's finding that, under federal law, there is no blanket protection of an insurance company's claim file."). Further, under federal law the date which triggers the application of the work product doctrine in the context of a first party insurance coverage dispute is the date of the formal denial of the claim by the insurer. Thus, an insurer who wishes to withhold from discovery documents prepared prior to that date must demonstrate that the particular documents were prepared in anticipation of litigation in order for the work product protection to apply. Royal Bahamian Ass'n., Inc. v. QBE Insurance Corp., 268 F.R.D. 695, 698 (S.D. Fla. 2010); Cutrale Citrus

Juices USA, Inc. v. Zurich American Insurance Group, No. 5:03-cv-420-Oc-10GRJ, 2004 WL 5215191, at *2 (M.D. Fla. Sept. 10, 2004).

Apparently recognizing that because there was no denial of coverage before suit was filed, Defendants concede in their Response that at a minimum the cut-off date for triggering work product is the date Plaintiff filed this action, February 17, 2010. Defendants, therefore, represent that they will produce all documents prepared by the them prior to February 17, 2010, subject to a few documents which Defendants contend are protected by attorney-client privilege, the work product doctrine or are completely irrelevant.

Accordingly, Plaintiff's motions to compel are due to be **GRANTED** with respect to requests nos. 1-6 and 8-14 of Plaintiff's First Request for Production of Documents to each Defendant. Each Defendant shall produce the documents responsive to requests nos. 1-6 and 8-14 of Plaintiff's First Request for Production of Documents. With regard to any documents to which Defendant still claims are privileged or protected as trial preparation material, each Defendant shall prepare and serve an amended privilege log. As to each document in the amended privilege log, Defendants shall describe the nature of the document and the information required by Fed. Civ. P. 26(b)(5)(A), which is sufficient to allow the Plaintiff to assess the claim of privilege.

## 2. Plaintiff's Request for Production No. 7

The only request for production still challenged by that Defendants is request for production no. 7, which in relevant part required each Defendant to produce:

> Your standard protocol or operating procedure in investigating and responding to builder's risk claims including a) standard protocol in notifying an insured that its builder's risk claim is covered or denied (even

>if the quantum is not yet determined), b) standard protocol in conducting inspections of the property, c) standard protocol in demanding examinations under oath, and d) standard protocol with respect to the length of time it takes to investigate a builder's risk claim.

Defendants claim that this request requires the production of document which are irrelevant. Defendants argue that the issue in this case is coverage, not bad faith on the part of Defendants, and therefore Defendants' claims procedures are irrelevant.

Fed. R. Civ. P. 26(b), which governs the scope of discovery, provides that a party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Notably, the party who seeks to exclude discovery as irrelevant bears the burden of demonstrating that it is indeed irrelevant. See, e.g., Graham v. Casey's General Stores, 206 F.R.D. 251, 254 (S.D. Ind. 2002)("The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant.").

This case is a first party insurance coverage dispute in which Plaintiff seeks a declaration that the damage to its apartment project was covered by each of the builder's risk policies issued by Defendants. Assuming the claims are covered Plaintiff seeks damages for breach of contract. As Defendants correctly point out, in first party insurance coverage disputes, as here, the proper scope of discovery does not include discovery of information regarding issues of bad faith. See, e.g., Buckley Towers

Condominium, Inc. v. QBE Insurance Corp., No. 07-22988-CIV, 2008 WL 2645680, at *2 (S.D. Fla. June 26, 2008)("In the context of first-party insurance coverage disputes, evidence geared solely to support a bad faith claim is premature and not discoverable, as arguments related to bad faith liability ... are premature until the coverage dispute is resolved."); Milinazzo v. State Farm Insurance Co., 247 F.R.D. 691, 696 (S.D. Fla. 2007).

The standard protocol and time frame in which each of the Defendants investigate, process, and ultimately deny or cover builder's risk claims is, therefore, not relevant in this action because the claims and defenses in this case depend upon the language of the individual policies issued by Defendants and whether these policies cover Plaintiff's losses. Whether Defendants' failure to pay the claims constitutes bad faith is simply not an issue at this stage. Accordingly, for this reason, Plaintiff's motions to compel are due to be **DENIED** with respect to request for production no. 7. Defendants therefore are not required to produce the documents responsive to request for production no. 7.

### B. Interrogatories

Plaintiff also seeks an order from this Court compelling Defendant Landmark to answer interrogatories 4, 6, and 11, Defendant Westchester to answer interrogatories 6 and 7 and Defendant Rockhill to answer interrogatories 5 and 6 from Plaintiff's First Set of Interrogatories. The relevant interrogatories are identical – except one interrogatory directed to Defendant Landmark requesting information concerning the affirmative defense that there were dishonest/criminal acts on Plaintiff's part that would operate to exclude coverage under the policies issued by Landmark. Each interrogatory requests

the Defendant to explain whether it has standard protocol in denying a builder's risk claim, what that protocol is, and what actions each Defendant took in investigating Plaintiff's claims. Defendants represent in their Response that they will provide amended responses to Plaintiff's First Set of Interrogatories. Accordingly, Plaintiff's motions are **GRANTED** with respect to interrogatories 4, 6, and 11 directed to Landmark, interrogatories 6 and 7 directed to Westchester and interrogatories 5 and 6 directed to Defendant Rockhill of Plaintiff's First Set of Interrogatories. Defendants shall provide full and complete responses to each of those interrogatories.

### III. CONCLUSION

In light of the foregoing, it is **ORDERED** that:

(1) Plaintiff's Amended Motion To Compel Discovery From Landmark American Insurance Company (Doc. 63), Plaintiff's Motion To Compel Discovery From Westchester Surplus Lines Insurance Company (Doc. 65), and Plaintiff's Amended Motion To Compel Discovery From Rockhill Insurance Company (Doc. 66) are **GRANTED**. With regard to Plaintiff's First Requests for Production of Documents nos. 1-6 and 8-14, Defendants shall produce all documents responsive to each of these requests.

(2) Plaintiff's motions to compel are **DENIED** with regard to Request For Production No. 7.

(3) To the extent that any Defendant continues to assert that any document is privileged under the attorney-client privilege or protected as trial preparation materials, the Defendant shall prepare and serve an amended privilege log in the form provided under Fed. Civ. P. 26(b)(5)(A).

(4) After Plaintiff has reviewed the amended privilege logs, to the extent that Plaintiff still seeks the production of any of the documents on the logs, Plaintiff shall confer in good faith with Defendants as required by Fed. R. Civ. P. 37 and Local Rule 7.1(B) in an effort to resolve the matter. If there is still a dispute regarding the production of any document on the privilege logs, Plaintiff may file a supplemental motion to compel production of any such documents within ten (10) days of service of the amended privilege log. Defendants shall have ten (10) days from the filing of any such supplemental motion to compel to file a response.

(5) To the extent that the parties want the Court to conduct an *in camera* review of any documents, then such a request should be included in the motion to compel or in the response to the motion.

**DONE AND ORDERED** this 4th day of February, 2011.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge