IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

THE BARTRAM, LLC, a Delaware
limited liability company,

        Plaintiff,

v.                            CASE NO.: 1:10cv28-SPM/GRJ

LANDMARK AMERICAN INSURANCE
COMPANY, an Oklahoma corporation;
ROCK HILL INSURANCE COMPANY,
an Arizona corporation; and
WESTCHESTER SURPLUS LINES
INSURANCE COMPANY, a Georgia
corporation,

        Defendants.

_____/

## ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

      This case presents an insurance coverage dispute over damages that

resulted  from faulty workmanship in the construction of the Bartram Apartments,

located in Gainesville, Florida.  The insurance contracts between Plaintiff, who

owns the Bartram Apartments, and the Defendant insurers provides primary

coverage and three layers of excess coverage.[1]  They use standard builder's all

_____

    [1]  The primary policy issued by Defendant Landmark Insurance Company
has a limit of $5,000,000.00 per occurrence.  The first layer excess policy issued
by Defendant Rockhill Insurance Company has a limit of $5,000,000.00 per
occurrence.   The second layer excess policy issued by Defendant Westchester

risk insurance forms.  Each contract contains a coverage exclusion for faulty workmanship.  Each contract also contains an ensuing loss exception that provides coverage when "an excluded cause of loss . . . results in a Covered Cause of Loss."[2]  Both sides agree that the faulty workmanship exclusion applies in this case.  They do not agree, however, about the ensuing loss exception.

The insurance contracts contain other exclusions for wear and tear or deterioration, water damage, cracking, mold, expenses and lost rents, and failure to protect property.  Defendants contend that these exclusions bar coverage for Plaintiff's claims.  Defendants also contend that Plaintiff did not comply with notice and examination requirements for submitting its claim as specified in the contracts, thus forfeiting coverage.  Both sides have filed motions for summary judgment.

## I.    Standard for Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to

---

Surplus Lines Insurance Company has a limit of $10,000,000.00 per occurrence. The third layer of excess coverage by Landmark Insurance Company has a limit of $5,000,000.00 per occurrence.

[2]  This is how the ensuing loss exception is stated in the Rockhill excess policy.  See Statement of Material Facts in Support of Defendants' Motion for Summary Judgment, Doc. 116-1 at 15.  In the primary and excess policies issued by Landmark and the excess policy issued by Westchester, the exception reads: "But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage."  Id. at 14-15.  Despite the slight variance in wording, the exceptions are substantively the same.  No one has argued that their meanings are different.

any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  The interpretation of an unambiguous insurance contract

presents a pure issue of law that is appropriately determined on summary

judgment.  Saraqama India Ltd. v. Mosley, 635 F3d 1284, 1290 (11th Cir. 2011);

Acosta, Inc. v. Nat'l Union Fire Ins. Co., 39 So. 3d (Fla. 1st Dist. Ct. App. 2010).

Disputed factual issues may nevertheless exist about how an unambiguous

contract term should be applied given the circumstances of the case, thus

precluding summary judgment.  Certain Interested Underwriters at Lloyd's v.

Chabad Lubavitch of Greater Ft. Lauderdale, Inc., 65 So. 3d 67, 70 (Fla. 3d Dist.

Ct. App. 2011).  In interpreting the insurance contracts, the Court will apply

Florida law because the Bartram Apartments are located in Florida.[3]  See

LeFarge Corp. v. Travelers Indem. Co., 118 F.3d 1511, 1515-16 (11th Cir. 1990)

(in diversity action, applying choice of law provisions of Florida as forum state

and substantive law of Florida as the state where insured risk was located).

## II.    Ensuing Loss Exception

The primary policy issued by Landmark Insurance Company ("Landmark")

and the second and third layer excess policies issued by Westchester Surplus

Lines Insurance Company ("Westchester') and Landmark contain the same

ensuing loss exception.  The policies state: "We will not pay for a loss or damage

---

[3]  In apparent recognition that Florida law applies the parties rely
predominately on Florida law in their arguments.

caused by or resulting from: . . . [d]efective materials, faulty workmanship, error, omission or deficiency in designs, plans or specifications.  But if loss or damage by a Covered Cause of Loss results, we will pay for that resulting loss or damage."  Doc. 145-1 at 15 (emphasis supplied).  The first layer excess policy issued by Rockhill Insurance Company ("Rockhill') contains an analogous provision, which states: "We will not pay for a loss or damage caused by or resulting from [faulty workmanship].  But if an excluded cause of loss . . . results in a Covered Cause of Loss, we will pay for the loss or damage caused by that Covered Cause of Loss."  Id. (emphasis supplied).  The wording of the policies are not identical, but the parties do not argue that they differ in meaning from each other.

Under Florida law, the insured bears the burden to establish that an exception to an exclusion applies.  LeFarge, 118 F.3d at 1516; Fla. Windstrorm Underwriting v. Gajwami, 934 So. 2d 501, 506 (Fla. 3d Dist. Ct. App. 2005).  So here, the burden is upon Plaintiff to establish that coverage is provided through the ensuing loss exception.

The principle Florida case interpreting the ensuing loss exception, which both parties cite to, is Swire Pacific Holdings, Inc. v. Zurich Ins. Co., 845 So. 2d 161 (Fla. 2003).  Swire involved design defects to a condominium project, requiring the insured to spend approximately $4.5 million to alter the plans and correct structural deficiencies to bring the building in compliance with codes.  Id.

at 163.  The builders all-risk policy in <u>Swire</u> contained a design defect exclusion

with an ensuing loss exception.  The policy language stated that this exclusion

applies to:

> Loss or damage caused by fault, defect, error or omission in
> design, plan or specification, but this exclusion shall not apply to
> physical loss or damage resulting from such fault, defect, error or
> omission in design, plan or specification.

<u>Id.</u> at 165.  To fix the design defect, the insured was required to damage other

portions of the property and the insured sought coverage for those damages.  <u>Id.</u>

at 164.   In construing the policy language, the <u>Swire</u> court found that "loss or

damage" as used in the first part of the exclusion "means loss caused directly by

the design defect."  <u>Id.</u> at 166.  The court found that "physical loss or damage" in

the ensuing loss exception in the second part of the provision means "damage

that occurs subsequent to, and as a result of, a design defect."  <u>Id.</u>  The <u>Swire</u>

court held that the insured could not recover under the policy because "[n]o loss

separate from, or as a result of, the design defect occurred."  <u>Id.</u> at 168.  The

insured's sole claim was to recover expenses incurred in repairing a design

defect, and thus "[n]o ensuing loss resulted to invoke the exception to the [design

defect] exclusionary provision."  <u>Id.</u> at 167.

In this case, Plaintiff contends that it has suffered losses that are separate

from and the result of the faulty workmanship, thus triggering the ensuing loss

exception.  Specifically, water intrusion that occurred because of the faulty

workmanship caused damage to the buildings' exterior and interior finishes, wood

sheathing, framing, balcony systems, drywall ceilings, and stuccoed walls.

These damages are separate from the work needed to simply fix the faulty

workmanship, and Plaintiff contends that while the policy excludes coverage for

fixing the faulty workmanship, the ensuing losses that resulted from water

intrusion are covered.  Plaintiff's position is consistent with the Florida Supreme

Court's holding in Swire.  The loss Plaintiff is seeking coverage for resulted from

water intrusion, which is separate from repair of the faulty construction.

Defendants, however, argue for a different reading of the exclusion and

the ensuing loss exception.  Citing to language from a Florida appellate court,

Defendants contend that "an ensuing loss exception is not applicable if the

ensuing loss is directly related to the original excluded risk."  Nat'l Union Fire Ins.

Co. v. Texpak Group N.V., 906 So. 2d 300, 302 (Fla. 3d Dist. Ct. App. 2005).[4]

Defendants go on to explain that principles of proximate cause should be read

into the ensuing loss exception, citing to TMW Enterprises, Inc. v. Fed. Ins. Co.,

619 F.3d 574, 576 (6th Cir. 2010) and Chabad, 65 So.3d at 70.  According to

---

[4]  The Texpak case is distinguishable on the facts because the court found
that the loss resulted from the excluded peril and not the "minimal and
concomitant" failure of a felt belt.  Texpak, at 302, n.2.  Here, there is evidence to
support Plaintiff's claim that the water intrusion resulted in major loss apart from
the costs of fixing the faulty construction.  The damage occurred subsequent to
the faulty construction.  The damage, moreover, was not the direct result of the
faulty construction, but rather the direct result of water intrusion.

Defendants, since the faulty workmanship naturally and foreseeably led to water intrusion without any new, independent cause, there was no ensuing loss and coverage is barred by the faulty workmanship exclusion.  TMW, 619 F.3d at 579.

The cases relied upon by Defendants are distinguishable from the instant case because the exclusions in those cases were written so as to require a break in proximate cause to make sense of the policy language.  For example, in TMW, the insured made a claim for losses from water intrusion that resulted from faulty workmanship and construction.  TMW, 619 F.3d at 575.  The policy contained an exclusion, which stated: "This insurance does not apply to loss or damage *(including the costs of correcting or making good)* caused by or resulting from any faulty, inadequate, or defective . . .  workmanship . . . [or] construction . . . ." Id. at 575 (emphasis supplied).  The policy also contained an ensuing loss exception, which stated the "exclusion does not apply to ensuing loss or damage caused by or resulting from a peril not otherwise excluded."  Id.  The insured argued that the faulty workmanship exclusion should only be applied to the costs of fixing the faulty workmanship, but the loss from water intrusion should be excepted as an ensuing loss because water intrusion is a peril not otherwise excluded.  Id. at 576.

The court reasoned that "[i]f the ensuing loss clause provides coverage for water damage to TMW's walls, the only role left for the faulty workmanship exclusion is to block coverage for remedying the defects that allowed water to

infiltrate in the first place." Id. at 579.  The court rejected that reading because it made superfluous the exclusion's parenthetical reference to "'the costs of correcting or making good'" the faulty workmanship. Id. at 579-80.  There would be no need to have the parenthetical if the exclusion were construed to encompass only "the costs of correcting or making good" the defects, as proposed by the insured. Id.  Thus the TMW court ruled that the faulty workmanship exclusion should encompass the costs for fixing the faulty workmanship and all losses proximately caused by the faulty workmanship; that is, losses that naturally and foreseeably resulted from the faulty workmanship. Id.  With this reading, the ensuing loss exception was left to cover any "independent, non-foreseeable losses" that broke the chain of proximate cause flowing from the faulty workmanship. Id. at 578.  The court reasoned that "because defective wall construction naturally and foreseeably leads to water intrusion, the language of the exclusion, not the exception to the exclusion, ought to apply." Id. at 579.

Similarly, in Chabad, the policy contained a windstorm exclusion that excluded coverage for loss or damage "[c]aused directly or indirectly by Windstorm or Hail, regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage . . . ." Chabad, 65 So.3d at 68.  The wording of the exclusion is specially crafted to counteract Florida's efficient proximate cause doctrine. See Empire Indem. Ins. Co. v. Winsett, 325

Fed. Appx 849, 851 (11th Cir. 2003).  Under Florida's efficient proximate cause doctrine, if the efficient proximate cause (i.e. a cause that sets other causes in motion) is covered, then the resulting loss will be covered even if the other causes that are not covered contribute to the loss.  Id.  Given the language in the Chabad policy against applying the efficient proximate cause doctrine to windstrorm claims, the only meaningful way to read the ensuing loss exception is to require an intervening cause to break the chain of proximate cause to trigger coverage.

        In contrast to the exclusions in TMW and Chabad, the policy exclusions in the instant case do not require reading in a proximate cause element to make sense of the policy.  Unlike TMW, Defendant can cite to no language in the policy that would be rendered superfluous by taking it to mean that the policy excludes coverage for fixing the faulty workmanship, but the ensuing loss that resulted from water intrusion is covered.  Unlike Chabad, there is no language in the exclusion that requires a break in proximate cause.  To the contrary, the policies in this case plainly provide that if an excluded cause of loss "results" in a covered cause of loss, then "we will pay."  Doc. 145-1 at 15.

        The exclusions here are similar to the one in Swire, which the Florida Supreme Court found applied to "loss caused directly by the design defect" with the ensuing loss exception allowing coverage for loss or damage "that occurs subsequent to, and as a result of, a design defect."  Swire, 845 So. 2d at 166.

The <u>Swire</u> court did not apply a requirement that the chain of proximate cause be broken for the ensuing loss exception to apply.  Only that the ensuing loss "occur[] subsequent to, and as a result of, a design defect."  <u>Id.</u>

This means that ensuing losses, if they resulted from a covered cause, are covered under the policy regardless of whether the loss was naturally set in motion by an excluded cause of loss.  Given the plain meaning of the policy language, if the faulty workmanship resulted in water intrusion that subsequently resulted in ensuing losses, the cost to repair the faulty workmanship is excluded but the ensuing losses from the water intrusion are covered.[5]  This interpretation is consistent with <u>Swire</u> and the weight of authority interpreting the ensuing loss exception.  <u>See</u> <u>Harbor Communities, LLC v. Landmark Am. Ins. Co.</u>, No. 07-14336-CIV, 2008 WL 298624 (S.D. Fla. Aug. 4, 2008); <u>Eckstein v. Cincinnati Ins. Co.</u>, 469 F.Supp.2d 455 (W.D. Ky 2007); <u>Alton Ochsner Med. Found. v. Allendale Mut. Ins. Co.</u>, 219 F.3d 501, 505-06 (5th Cir. 2000).

**III.    Other Exclusions**

Although the bulk of Defendants' summary judgment argument rested on the inapplicability of the ensuing loss exception, Defendants cite to a variety of policy exclusions to argue that Plaintiff's ensuing losses are nevertheless not covered because they fall within other policy exclusions.  Each exclusion will be

---

[5]  Assuming water intrusion is not excluded elsewhere in the policy, which will be discussed in the next section.

addressed in turn.

### A.    Wear and Tear

Each of the policies specifically excludes coverage for wear and tear and deterioration.  The exclusions in the Landmark and Westchester policies contain the same wording:  "We will not pay for loss or damage caused by or resulting from . . . [w]ear and tear, any quality in the property that causes it to damage or destroy itself, hidden or latent defect, gradual deterioration, corrosion, rust, dampness or dryness, heat or cold."  Doc. 145-1 at 16.  The Rockhill policy has a similar exclusion:  "We will not pay for loss or damage caused by or resulting from any of the following . . . [w]ear and tear; [r]ust or other corrosion, decay, deterioration, hidden or latent defect or any quality in the property that causes it to damage or destroy itself."  Id. at 16-17.

Despite their identification of this exclusion, Defendants provide no facts to explain how the exclusion applies to Plaintiff's claim in this case.  The cases Defendants cite to are likewise unhelpful.  They deal with mechanical failure of aircraft engines.  Arawak Aviation, Inc. v. Indem. Ins. Co. of N. Am., 285 F.3d 954 (11th Cir. 2002); Little Judy Indus., Inc. v. Fed. Ins. Co., 280 So. 2d 14 (Fla. 3d Dist. Ct. App. 1973).  Defendants cite to no cases where the exclusion was found applicable to new construction damaged by water intrusion due to faulty workmanship.

The burden is upon Defendants to show that Plaintiff's loss arose from an

excluded cause.  Royale Green Condo. Ass'n Inc. v. Aspen Specialty Ins. Co.,

Case No. 07-21404-CIV, 2009 WL 799429 at *2 (S.D. Fla. Mar. 24, 2009).

Defendants have not met this burden with regard to the wear and tear exclusion.

### B.   Rain

The Landmark and Westchester policies, but not the Rockhill policy,

contain a rain exclusion.  The wording of the exclusion is the same for the

Landmark and Westchester policies: "We will not pay for loss or damage caused

by or resulting from . . . [r]ain, snow, sand or dust, whether driven by wind or not,

to the interior of any building or structure or the property inside the building or

structure, unless the building or structure first sustains damage from a covered

peril to its roof or walls through which the rain, snow, sand or dust enters."  Doc.

145-1 at 17.  Defendants argue that Plaintiff's loss is not covered because the

damage to the roof and walls through which rain entered was caused by faulty

workmanship, not a covered cause of loss.

The cases Defendants cite to are not particularly helpful because of

differences in the facts and policy provisions.  See New Hampshire Ins. Co. v.

Carter, 359 So. 2d 52 (Fla. 1st Dist. Ct. App. 1978); Fla. Windstorm Underwriting

v. Gajawani, 934 So. 2d 501 (Fla. 3d Dist. Ct. App. 2005).  Nevertheless,

Defendants' argument here relies on its previous argument, rejected by the court,

that the faulty workmanship exclusion extends to all losses proximately caused

by the faulty workmanship.  Defendants do not acknowledge that ensuing losses

(losses that occur subsequent to and as a result of the faulty workmanship) are covered.  Nor do they acknowledge that this is an "all risk" policy where all perils are covered unless excluded, and that the faulty workmanship exclusion is limited by the ensuing loss exception.  Moreover, by its plain terms the rain exclusion applies to losses to the interior of the building and the property inside it, not to the exterior of the building or the structure of the building, which appears to be the bulk of the damage claimed by Plaintiff.  For these reasons, Defendants have failed to show that the rain exclusion bars Plaintiff's claim.

### C.    Water Seepage

The Rockhill policy contains a water seepage exception, which reads: "We will not pay for loss or damage caused by or resulting from any of the following: . . . [c]ontinuous or repeated seepage or leakage of water, or the presence of condensation or humidity, moisture or vapor, that occurs over a period of 14 days or more."  Doc. 145-1 at 19-20.   Plaintiff contends that this exclusion should not apply because a separate section of the policy defines "water damage" as "accidental discharge or leakage of water or steam as the direct result of the breaking apart or cracking of a plumbing, heating, air conditioning, or other system or appliance (other than a sump system including its related equipment and parts), that is located on the described premises and contains water or steam."  Doc. 132 at 19-20.  And in fact, the sole case Defendants rely upon for application of this exclusion involved damages caused by a leak from a toilet

supply line of a vacant home.  Hoey v. State Farm Fla. Ins. Co., 988 So. 2d 99

(Fla. 4th Dist. Ct. App. 2008).  Moreover, unless the water seepage is coming

from a fixed source, such as plumbing, heating, or air conditioning, it is difficult to

make sense of the language in the policy stating that the excluded water

seepage must occur "continuous[ly] or repeated[ly]" for "14 days or more" since

seepage from rain would seem to be an intermittent occurrence.

Given the limited argument provided and the uncertainty about the

damages excluded by the water seepage exclusion, the Court cannot conclude

as a matter of law that the Rockhill policy excludes Plaintiff's claims.

### D. Cracking

The Rockhill policy also contains an exclusion for cracking, which reads:

"We will not pay for loss or damage cause by or resulting from any of the

following . . . [s]ettling, cracking, shrinking, or expansion."  Doc. 145-1 at 17.

Defendants note that the exclusion does not limit the exclusion for cracking or

settling to certain causes, and thus any losses by Plaintiff resulting from cracking

or settling should be excluded.

Plaintiff contends that this exclusion applies to cracking associated with

settlement or moving of the foundation, not to cracking that results from water

intrusion of the building envelope.  Plaintiff notes that the only Florida case relied

upon by Defendants, Fla. Residential Prop. and Cas. Joint Underwriting Ass'n v.

Kron, 721 So. 2d 825, 827 (Fla. 3d Dist. Ct. App. 1998), construed the exclusion

against the insurers because of ambiguity about whether the exclusion applies "where the cause of the crack is an external penetrating force, as opposed to the gradual shifting of a structure." Kron, 721 So. 2d at 827. The other cases Defendants rely upon deal with cracking that results from the settlement or movement of the foundation. See Montee v. State Farm Fire, 782 P.2d 435 (Or. Ct. App. 1989); Gen. Ins. Co. v. Hallmark, 575 S.W.2d 134 (Tex. Civ. App. 1978); Bentley v. Nat'l Standard Ins. Co., 507 S.W.2d 652 (Tex. Civ. App. 1974). Furthermore, Defendants do not cite to any facts to explain how the exclusion applies to Plaintiff's claim in this case.

Given the limited argument provided and the uncertainty about the factual application of the exclusion to this case, the Court cannot conclude as a matter of law that the Rockhill policy's cracking exclusion applies to Plaintiff's claims.

### E.    Mold Related Damage

All of the policies contain mold exclusions. The exclusion in the Landmark policies read:

> We will not pay for a loss or damage caused directly or indirectly by the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria. Such cause of loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. But if "fungus," wet or dryrot or bacteria results in a covered cause of loss, we will pay for the loss or damage caused by that 'covered cause of loss.'
>
> . . . To the extent that coverage is provided in the Additional Coverage – Limited Coverage for 'Fungus,' Wet Rot, Dry Rot And Bacterial with respect to loss or damage by a cause of loss other

than fire or lightening . . . [t]he following Additional Coverage is added:

**ADDITIONAL COVERAGE – Limited Coverage for "Fungus," Wet Rot, Dry Rot And Bacteria** . . . .This limited coverage applies only when the "fungus" . . . is the result of one or more of the following causes that occurs during the policy period and only if all reasonable means were used to save and preserve the property from further damage at the time of and after the occurrence, and only if any loss resulting from the following is reported to us within 60 days of the occurrence. . . .  A "covered cause of loss" other than fire or lightening . . . .

Doc. 145-1 at 18.  The Westchester exclusion reads:

We will not pay for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any cause or event that contributes concurrently or in any sequence to the loss:

**"Fungus," Wet Rot, Dry Rot and Bacteria** – Presence, growth proliferation, spread or activity of "fungus," wet rot, or dry rot, or bacteria.  But if "fungus," wet rot, dry rot, or bacteria results in a "specified cause of loss," we will pay for the loss or damage caused by that "specified cause of loss."  This exclusion does not apply when "fungus," wet rot or dry rot or bacteria results from fire or lightening.

Enforcement of any ordinance or law which required the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" due to the presence, growth, proliferation, spread or any activity of "fungus," wet or dry rot or bacteria; or

The cost associated with the enforcement of any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants," "fungus," wet or dry rot or bacteria.

Id. at 18-19.  The mold exclusion in the Rockhill policy reads:

**ABSOLUTE FUNGUS, MOLD OR SPORES EXCLUSION**
The following cluases are added to this policy and take precedence over any other wording contained in this policy.  This policy does

not apply to loss or damage caused by or resulting from the actual or threatened existence, growth, release, transmission, migration, dispersal, or exposure to "mold," "spores," or "fungus." "Fungus," "mold," or "spores" means any type ir form of fungus, including mold or mildew, and any mycotoxins, spores, scents or by-products produced or released by fungi.  Nor does this policy apply to the cost of removal, disposal, decontamination or replacement of insured property which has been contaminated by fungus, mold, or spores and by law or civil authority must be restored, disposed of, or decontaminated.

Id. at 19.  Defendants argue that each of the mold exclusions preclude coverage for mold, especially given the anti-concurrent cause language in the provisions.

Plaintiff responds that it is not seeking payment for loss caused by mold or fungus, and not seeking payment for loss that was concurrently caused by mold and other cause.  Accordingly, this issue is deemed moot.

## F.      Rents, Loan Expenses, Consultants, Diminution of Value

All of the policies contain an exclusion for consequential losses caused by delay, loss of use, or loss of market.  The policies also contain an endorsement that provides limited coverage for soft costs.    Defendants argue that the exclusion for consequential loss bars coverage for lost rents, loan expenses, retention of consultants, and diminution in the value of the insured property.

The exclusions in the Landmark and Westchester policies read: " We will not pay for a loss or damage caused by or resulting from . . . [d]elay, loss of use, loss of market or any other consequential loss."  Doc. 145-1 at 20.  The exclusion in the Rockhill policy reads: "We will not pay for loss or damage caused by or

resulting from any of the following . . . [d]elay, loss of use or loss of market." <u>Id.</u>

The soft cost endorsement of the Landmark and Westchester policies

read:

1.     Additional Expense – Soft Cost Coverage

We cover your additional expense as indicated below which results from a delay in the completion of the project beyond the date it would have been completed had no loss or damage occurred.  The delay must be due to direct physical loss or damage to Covered Property and be caused by or result from a Covered Cause of loss. We will pay covered expenses when they are incurred.
. . .

**4.     Special Exclusions**

The following Exclusions apply to this Additional Coverage in addition to the Exclusions contained in the Builders' Risk Coverage Form.  We will not pay for loss or damage or expense caused by or resulting from:
. . .

b.     Additional time that would be required to repair or replace any part of the building's property or equipment due to:

(1)     the enforcement of any ordinance or law that requires the use of material or equipment different from the property destroyed.
. . .

(3)     Improvements necessary to correct deficiencies of original construction or design.

(4)     Damages for breach of contract, late or non-compliance of orders or penalties of any nature.

<u>Id.</u> at 21.  The soft cost endorsement of the Rockhill policies read:

**BUILDERS RISK**

## SOFT COST AND RENTAL INCOME ENDORSEMENT

. . .

Delay means a delay in the construction, erection or fabrication of a building or structure as a direct result of a Covered Cause of Loss and that the project must be delayed beyond the policy expiration date.

COVERAGE

1.      Soft Costs – We pay for soft cost expenses that arise out of a *delay* resulting from direct physical loss or damage to a building or structure described on the Soft Cost Schedule that is caused by a Covered Cause of Loss.

. . .

**Additional Exclusions**

In addition to the Exclusions stated in the Builders' Risk Policy, the following Exclusions shall apply to this Endorsement.

1.      Additional Time – We do not pay for any increase in expense or loss resulting from additional time that would be required to replace or repair any party of the covered property due to:

. . .

d.      improvements necessary to correct deficiencies of original construction, erection, or fabrication.

Id. at 22.

Plaintiff contends that its losses for lost rents, loan expenses, retention of consultants, and diminution of value are not the kinds of losses excluded under the exclusions.  With regard to the costs for retention of experts, Plaintiff contends that this loss is the result of the water intrusion from the faulty construction, not from delay, loss of use, or loss of market.  It is different in kind

from the other losses because it flows directly from the water damage.   The Court agrees.

With regard to the rents, loan expenses, and diminution of value, it is difficult to understand Plaintiff's argument.  Plaintiff states that "it is not seeking damages associated with a delay to the completion of the Project . . . ."  Doc. 132 at 18.  Plaintiff goes on to argue, however, that delay is different from consequential loss and that since these types of losses were within the contemplation of the parties at the time the policies were issued, as evidence by their inclusion in the soft costs endorsement, they should not be deemed to be consequential losses.  The consequential nature of loss, however, is not based on the damages being unforeseeable by the parties.  What makes a loss consequential is that it stems from relationships with third parties, while still reasonably foreseeable at the time of contracting.  See Hardwick Properties, Inc. v. Newbern, 711 So. 2d 35, 40 (Fla. 1st Dist. Ct. App. 1998).  "The most common form of consequential damages is lost profits."  Id.

In this case, lost rents, loan expenses, and diminution of value are consequential losses excluded by the policies.  Accordingly, summary judgment will be granted in favor of Defendants on this issue.

### G.     Failure to Protect Property

Each of the policies requires the insured to take "all reasonable steps to

protect the Covered Property from further damage." Doc. 116 at 23.  Defendants

contend that Plaintiff did not take reasonable steps to protect the property from

further damage because Plaintiff knew of the faulty workmanship problems and

did not require the contractor to make repairs immediately.

Plaintiff contests this matter.  Resolution of the issue involves disputed

material facts, thus precluding summary judgment.

### H.      Post-Loss Requirements

Finally, Defendants argue that Plaintiff failed to comply with various post-

loss requirements of the policies for notice and examination under oath and

refraining from filing legal action until all policy conditions have been satisfied.

Again, Plaintiff disputes these matters.  Disputed issues of material fact

preclude resolution of these matters on summary judgment.

### IV.    Conclusion

Plaintiff's ensuing losses resulting from the faulty workmanship are

covered under the policies.  As to the mold exclusion, since Plaintiff is not making

a claim for losses for mold, this exclusion is not at issue.  The consequential loss

exclusions bar coverage for lost rents, loan expenses, and diminution of value,

but not the costs of retaining experts.  As to the other exclusions, neither side

has demonstrated an entitlement to judgment as a matter of law.  Accordingly, it

is

ORDERED AND ADJUDGED:

CASE NO.: 1:10cv28-SPM/GRJ

1.      Defendants' motion for summary judgment (doc. 116) is granted as to the consequential loss exclusions but only for lost rents, loan expenses and diminution of value.  The motion is denied as moot as to he mold exclusion.  In all other respects, the motion is denied.

2.      Plaintiff's cross motion for partial summary judgment (doc. 132) is granted as to liability for ensuing losses resulting from faulty workmanship.  In all other respects, the motion is denied.

DONE AND ORDERED this 30th day of March, 2012.


                                        *s/ Stephan P. Mickle*
                                        Stephan P. Mickle
                                        Senior United States District Judge